RECEIVED

MAY 26 2016

AT 8:30_____M
WILLIAM T. WALSH

## WHELAN v DAWSON

**ISSUES:** State Judge Tandra Dawson has transgressed Federal precedent and the Constitution by denying my right to have contact with my daughter WITHOUT expedient due process.

**FACTS:** On April 1, 2016, Judge Tandra Dawson summarily denied me, Steven Whelan, contact with my daughter. No due process hearing was provided prior to multiple months of denying me of my right to a relationship with my one year old daughter, ▮▮▮▮▮▮▮▮. Ms. Dawson affirmed this ruling on April 26, 2016, despite failure to provide a due process hearing on the justification for denial of parental contact. Ms. Dawson's Clerk was asked on May 23, 2016 when Ms. Dawson's Court would consider my motion to resume visitation, she informed my counsel, Paul Leavin, that she did not know when Ms. Dawson's Court would get around to reviewing the motion made on May 9, 2016. Prior motions were denied. Since she was violating Mr. Whelan's Constitutional Rights with her court orders, Ms. Dawson was acting in a personal capacity and does not deserve judicial immunity in this matter.

**RELEVANT CASES:** 42 U.S.C. § 1983, wherein it is asserted that a relationship between a parent and child is a Constitutional right; Murphy v. Morgan (7th Cir. 1990), wherein the Court asserted that it is the State's responsibility to initiate a prompt post-deprivation hearing; Whisman Whisman v. Rinehart (8th Cir. 1997), in which it is stated that a parent and child have a liberty interest in associating with one another; Quillion v. Walcott (98 S. Ct 1978), which determined that a once married father is separated from a mother could not constitutionally be treated differently than a married father living with his child; Stanley v. Illinois (92 S. Ct. 1208 1972), which states that "the parent-child relationship is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection."

**INVESTIGATION:** The court records from the Supreme Court of New York, IDV Part, from case Index No. 309298/15 need to be subpoenaed by the New Jersey District Court in order to conduct a proper investigation. Since I, Steven Whelan, am not a lawyer, I am not legally permitted to possess copies of various relevant court documentation. While I could provide Affadavits and other sundry material related to the case, the only proper way for the full scope of the proceedings to be comprehended is by means of a review of entire Court record. The Court transcripts from the hearing dates would also provide material information related to the case, and so should also be subpoenaed. According to other lawyers who spend time in Judge Dawson's Court, Ms. Dawson periodically suspends parental visitation without due process. It might behoove the District Court to review incidents related to mine in order to contravene this routine violation of federal law by a state judge.

**SUMMARY:** I am a responsible, intelligent, loving father. My wife, Ms Lockard, has a mental health history that includes control issues and a diagnosis of paranoia, and so she obsessively seeks to restrict my access to our daughter. My wife's parental perfectionism precipitated a post-partem psychotic break, for which she had to be hospitalized for ten days. Now Judge Dawson's Court is acting an instrument of that same neurosis. Perhaps Judge Dawson fears being sued by Jill Zuccardy, who is counsel to Ms. Lockard, since Ms. Zuccardy has been involved in successful cases against judges in the past. There is no obvious explanation for Ms. Dawson's transgressions – yet, the fact is that I have not seen my daughter for over two months, I have not received a due process hearing with regard to the justifications for the ruling, and there is no clear guidance on when I might be allowed to see my daughter again. I have never endangered, neglected, or hurt my daughter. I love and miss her. It is psychologically debilitating to endure this deprivation of contact with my daughter when I have never done anything but care for her.

*I certify that these statements are true and accurate*
*Steven Whelan 5/26/16*

JS 44 (Rev. 1/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

RECEIVED MAY 24 2016 WILLIAM T. WALSH CLERK

## I. (a) PLAINTIFFS
STEVEN WARREN WHELAN

**DEFENDANTS**
TANDRA L. DAWSON, in her personal capacity

(b) County of Residence of First Listed Plaintiff   Southern Middlesex County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Unknown
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, Email and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

Handwritten: 20003-2016  20004-2016  20005-2016  20070-2016  20095-2016

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U. S. C. 1983
Brief description of cause:
Suit to restore paternal visitation suspended in violation of the 5th Amendment and 14th Amendment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*:   JUDGE Hon Tandra Dawson   DOCKET NUMBER 309298/15

DATE
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

RECEIVED
MAY 26 2016
AT 8:30_____M
WILLIAM T. WALSH

## WHELAN v DAWSON

**ISSUES:** State Judge Tandra Dawson has transgressed Federal precedent and the Constitution by denying my right to have contact with my daughter WITHOUT expedient due process.

**FACTS:** On April 1, 2016, Judge Tandra Dawson summarily denied me, Steven Whelan, contact with my daughter. No due process hearing was provided prior to multiple months of denying me of my right to a relationship with my one year old daughter, ▇▇▇▇▇▇▇▇▇▇▇▇. Ms. Dawson affirmed this ruling on April 26, 2016, despite failure to provide a due process hearing on the justification for denial of parental contact. Ms. Dawson's Clerk was asked on May 23, 2016 when Ms. Dawson's Court would consider my motion to resume visitation, she informed my counsel, Paul Leavin, that she did not know when Ms. Dawson's Court would get around to reviewing the motion made on May 9, 2016. Prior motions were denied. Since she was violating Mr. Whelan's Constitutional Rights with her court orders, Ms. Dawson was acting in a personal capacity and does not deserve judicial immunity in this matter.

**RELEVANT CASES:** 42 U.S.C. § 1983, wherein it is asserted that a relationship between a parent and child is a Constitutional right; Murphy v. Morgan (7th Cir. 1990), wherein the Court asserted that it is the State's responsibility to initiate a prompt post-deprivation hearing; Whisman Whisman v. Rinehart (8th Cir. 1997), in which it is stated that a parent and child have a liberty interest in associating with one another; Quillion v. Walcott (98 S. Ct 1978), which determined that a once married father is separated from a mother could not constitutionally be treated differently than a married father living with his child; Stanley v. Illinois (92 S. Ct. 1208 1972), which states that "the parent-child relationship is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection."

**INVESTIGATION:** The court records from the Supreme Court of New York, IDV Part, from case Index No. 309298/15 need to be subpoenaed by the New Jersey District Court in order to conduct a proper investigation. Since I, Steven Whelan, am not a lawyer, I am not legally permitted to possess copies of various relevant court documentation. While I could provide Affadavits and other sundry material related to the case, the only proper way for the full scope of the proceedings to be comprehended is by means of a review of entire Court record. The Court transcripts from the hearing dates would also provide material information related to the case, and so should also be subpoenaed. According to other lawyers who spend time in Judge Dawson's Court, Ms. Dawson periodically suspends parental visitation without due process. It might behoove the District Court to review incidents related to mine in order to contravene this routine violation of federal law by a state judge.

**SUMMARY:** I am a responsible, intelligent, loving father. My wife, Ms Lockard, has a mental health history that includes control issues and a diagnosis of paranoia, and so she obsessively seeks to restrict my access to our daughter. My wife's parental perfectionism precipitated a post-partem psychotic break, for which she had to be hospitalized for ten days. Now Judge Dawson's Court is acting an instrument of that same neurosis. Perhaps Judge Dawson fears being sued by Jill Zuccardy, who is counsel to Ms. Lockard, since Ms. Zuccardy has been involved in successful cases against judges in the past. There is no obvious explanation for Ms. Dawson's transgressions — yet, the fact is that I have not seen my daughter for over two months, I have not received a due process hearing with regard to the justifications for the ruling, and there is no clear guidance on when I might be allowed to see my daughter again. I have never endangered, neglected, or hurt my daughter. I love and miss her. It is psychologically debilitating to endure this deprivation of contact with my daughter, when I have never done anything but care for her.

*I certify that these statements are true and accurate*

*Steven Whelan 5/26/16*

RECEIVED

JUN 29 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

# EMERGENCY

MOTION TO RECONSIDER CASE 3:16-CV-02948-PGS-LHG

I'm not exactly clear on my Judge Sheridan invoked the Colorado River Conserv. Dist. v. United States 424 U. S. 800. Regardless, I'm glad he did since it seems to offer clues for restoring contact with my daughter. I appreciate his offer of this conceptual Trojan Horse that destabilizes the authority of Judge Dawson's state court rulings. For showing me how to interdict Judge Dawson shrewdly so as to avoid implicating himself in the judicial community, I am truly grateful to Judge Sheridan.

Obvious to anyone with a legal background (which I do not have) is the fact that the cited case concenters around the differentiation of state and federal authorities. However, less clear to anyone who takes the time to untangle the logic of the convoluted ruling is the fact that this case does not justify dismissal of my case. In 424 U. S. 819, the ruling remarks, "Turning to the present case, a number of factors clearly counsel against concurrent federal proceedings. The most important of these is the McCarran Amendment itself. The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system." Naturally, the relevance of the McCarren Amendment for paternal contact questions cannot be overstated. It makes a lot sense that Judge Sheridan emphasized this case in particular since the ruling includes the primary importance of that Amendment. As is well known to the general public, prior to enactment of this legislation, federal water rights could only be adjudicated in actions filed (or not opposed) by the United States because there was otherwise no waiver of sovereign immunity providing for the involuntary joinder of the United States to water rights adjudications. And so, decades later (pardon me for this tiresome summary of what we all know so well), it was ruled that federal courts may abstain from exercising their jurisdiction where comprehensive state proceedings addressing the same claims

are already underway. I can only surmise that, because my human body and my daughter's are over 90% water, Judge Sheridan supposes that the federal versus state authority implications of this case are relevant to our constitutional rights case.

Naturally, I'm joking and I realize that Judge Sheridan is grounding this decision in the concept that "comprehensive" proceedings are already underway. By this logic, I suppose any state judge can prolong a case indefinitely and not be held accountable for denying constitutional rights to a defendant. Let's talk this out. In all honesty, I'm just trying to understand the application of the law here. Since I'm asking the Federal Court that the state court stop violating my constitutional rights, Judge Sheridan is saying that this case should be dismissed and heard before the same court that is violating my constitutional rights (has been violating my constitutional rights for 3 months) to consider. The congruity with the cited property rights case manifestly holds a lot of water.

Probably along the lines of the ruling quoted here, Judge Sheridan feels that it was important to consider the plainly prescient remarks from 424 U. S. 820: "We need not decide, for example, whether, despite the McCarran Amendment, dismissal would be warranted if more extensive proceedings had occurred in the District Court prior to dismissal, if the involvement of state water rights were less extensive than it is here, or if the state proceeding were in some respect inadequate to resolve the federal claims. But the opposing factors here, particularly the policy underlying the McCarran Amendment, justify the District Court's dismissal in this particular case."

Just as there is a ready availability of systems for state litigation regarding water rights, there are ways to litigate in state courts for the constitutional rights of a father and daughter to have contact with each other. I must admit, though, that it seems like a logical quantum leap to extend a property right ruling to a constitutional right case. Like I say, I'm not a lawyer or a legal authority - in my eyes, though, a

question about water rights is quantitatively different from a question about the rights of a daughter and a father to have contact with each other.  Call me crazy, but citing that case as precedent for mine seems like a perversion of the spirit of the law.  There is no comprehensive system in New York State for the adjudication of the violation of my constitutional rights, and my pleas to have them considered evenhandedly by Judge Dawson have been ignored.

I suppose this is not the place to get into the fact that the principle of proportionality is incorporated as part of the general clause that govern the American Commission on Human Rights (ACHR).  That provision is generally meant as "a synonym for the non-arbitrariness of the State's inverventionan and it's compatibility with the American Convention." (Shelton, The Oxford Handbook of International Human Rights Law, p. 462). Whereas the stripping of my rights might be proportional to the neurosis of my mentally troubled wife and the lawyer, Ms. Zuccardy, who has fallen under her spell, there is no external reality that is proportional with Judge Dawson's rulings.  While I may be mis-using some jargon, the logic of what I just unpacked indicates that a human rights violation is taking place.

The United States v. Akin case in the Tenth Circuit Court of Appeals and the cited case of Colorado Water River Conserv. Dist., the rulings remark that abstention of the Federal Court is conceptually inappropriate if the state court is violating a citizen's constitutional rights.  No principle or citation of state law has been made in Judge Dawson's decisions to violate my constitutional rights.  In theory, it seems to me as though the state court Judge Dawson is taking vigilante justice through her cape and gavel.  My wife, Meghan Lockard, has not only threatened my life and physically assaulted me (both well-documented in prior court papers), but she has been abusing the state legislative process for which her lawyer is a co-author on the legal textbook.  Ms. Lockard has been threatening my life and freedom explicitly, yet she is being treated by Judge Dawson as a victim.  I have filed numerous

requests to have visitation restored and Judge Dawson completely ignores these requests to allow me this basic constitutional right to interactions with my daughter.

I don't care if I have to get a law degree - this is going to get litigated until all that is left standing are my family's basic human rights. There is no substantive justification for depriving myself and my daughter our constitutional rights to a relationship with each other. This fact is obvious from all the evidence, what I've said, and the documents included with this statement. My understanding of the upper courts is that they are supposed to protect people like myself and my daughter. If necessary, I will escalate this to SCOTUS. If SCOTUS denies me visitation, I will appeal it. If they deny me, I will appeal to politicians and international human rights groups. The failure of the court system to check the neurotic incompetence of the overextended Judge Dawson in her state court would be deplorable if it continues.

As a little more food for thought, here are a few more excerpts from the Colorado Conserv. Dist. v. United States case that seem incompatible with the ruling:

"The abstention doctrine is confined to three categories of cases, none of which applies to the litigation at bar; hence the District Court's dismissal on the basis of abstention was inappropriate. Pp. 424 U. S. 813-817.

401 U.S. at 401 U. S. 526.

B

Next, we consider whether the District Court's dismissal was appropriate under the doctrine of abstention. We hold that the dismissal cannot be supported under that doctrine in any of its forms.

Abstention from the exercise of federal jurisdiction is the exception, not the rule.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

County of Allegheny v. Frank Mashuda Co., 360 U. S. 185, 360 U. S. 188-189 (1959).

"[I]t was

Page 424 U. S. 814

never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.""

# EMERGENCY REQUEST TO RECONSIDER CASE 3:16-CV-02948-PGS-LHG

I'm just a layperson attempting to defend his rights in our complex legal system. I have a good understanding of logic and induction, however, and the grounds upon which Judge Dawson ruled to prolong the suspension of paternal visitation have no legal nor logical basis. In the morning tomorrow, I'm going to pick up a transcript of the court record from the April 23, 2016 hearing. From my memory of the hearing, which is effectively eidetic, I'm just going to write up these responses to the justifications she gave for her verbal ruling (she did not want to put her ruling in writing).

1) Judge Dawson read off a fourth-hand summary of an alleged, unsubstantiated incident of my parental responsibility. The Mental Health Services psychiatrist, Dr. David Gerard, interviewed both Meghan Lockard and I to assess our fitness to parent. Ms. Lockard had not been in the emergency room at Weill-Cornell psychiatric hospital with me during the alleged incident because she had been admitted into the psychiatric emergency room for a postpartum psychotic break. She recounted her misinterpretation of the ACS investigator's summary of what unfolded in the waiting room to Dr. Gerard, and then Judge Dawson read that fourth-hand account from Dr. Gerard in her court on April 23, 2016. Judge Dawson used this as part of her justification for denying the constitutional rights of my daughter and I to access to each other.

2) After Jill Zuccardy, my wife's lawyer, slanderously alleged that I had endangered my daughter by driving her while recovering from my post-concussion disorder, I emailed her. I had already explained in prior Affidavits that my post-concussion disorder, which resulted from Ms. Lockard punching me in the head, did not impair my ability to drive. Indeed, I have driven tens of thousands of miles and not been found to be at fault in any accident ever since Ms. Lockard physically abused me. I expressed my aggravation to Ms. Zuccardy for her disregard for and

1

disinterest in the abuse I've endured, and the emails expressing that exasperation were included as a reason why I should not be allowed to see my daughter. In fact, I have shown impressive restraint in the face of Judge Dawson's and Ms. Zuccardy's trivialization of my post-concussion disorder, which has required now seven months of treatment and, over that time period, one hour of cognitive exercises every day. I have been living with the aftermath of a violently abusive spouse's inflicted injuries, and yet I am being treated as though I am abusive.

3) Ms. Zuccardy stated on the record (this should be in the transcript I'm picking up) that the sexual emails that they had attributed to me in order to argue denial of visitation cannot be traced to a specific geographical source, and therefore the allegations that I created the emails (which the emails themselves do not indicate) cannot be evidenced. Judge Dawson nonetheless shook her head and seemed to continue to believe that I had sent said emails. Her presumption of my culpability seems to withstand any declaration of lack of evidence. I do not myself have the means to investigate said emails; it was the District Attorney that said they could not be attributed to me.

4) Judge Dawson put forth that my contempt of court charges have been escalating and that that escalation implies a "lethal" risk. I have to question her sanity if she said that in sincerity. The fourth contempt of court arrest charges alleged that I had called Ms. Lockard 30 times over the course of several days and not said anything. These were charged as felonies because they were the fourth round of contempt of court charges. The fifth charge was that someone who knows my face from a picture taken five years ago thought they saw me on the street. In what universe this could legitimately be framed as an escalation that implies a "lethal" risk, I think even Judge Dawson would have trouble explaining. I have never committed any violence nor threatened any violence towards anyone. The allegations that I have harassed Ms. Lockard have no bearing whatsoever, regardless, on my relationship with my

2

daughter. Namgyal Gyalnor from Forestdale observed me with my daughter prior to changing companies, and her report in the court record verifies that she understood me to be a competent father.

5) Dr. Gerard gave an incomplete report to Judge Dawson about my involvement with Forestdale, Inc. I have been involved with them since July of last year and no one has ever thought that I am unfit to parent. Ms. Gyalnor fought for my right to contact with my daughter until she changed jobs to another group. No one at ACS nor at Forestdale thinks that I have ever hurt my daughter NOR do they think that I have ever neglected my daughter NOR does anyone with an informed opinion think that I am unfit to parent. CFS has observed me spending time with my daughter and seen that I parent competently. It is truly an injustice and constitutional violation to deny my daughter and I our right to a relationship with each other.

6) It causes undefinable psychological harm to a child to deny them contact with a parent even for a month. I have not seen my daughter for 3 months and I do not have a prospect of seeing her for another 3 months because Judge Dawson has decided to postpone any further hearings until then. If this District Court will not restore my constitutional rights that have been stripped without due cause, this case will be going all the way to the SCOTUS. Judge Dawson has used a solipsistic Mental Health Services report that predicates its recommendation of no visitation on Ms. Lockard's third-hand recountings as grounds for denying my daughter and I the right to an ongoing relationship with each other. It is disgusting to think that a court that is supposed to uphold the constitutional rights of citizens would choose to ignore what is going on out of either overextension or fear of retaliation (I cannot imagine why else Judge Dawson can get away with this). I have the papers ready to go to the 3rd Circuit Court this week if this District Court is obtuse enough to disregard my pleas.

7) I miss my daughter, I love my daughter, I have never hurt my daughter, I have never neglected my daughter. Any human being with any decency can see this case for what it is: a

3

judge being so scared of criticism or backlash that that judge prefers instead to "play it safe" by being overcautious. This is the point in that judge's career where playing it safe has gone too far and will in fact be the thing that disgraces that judge in the newspapers. I have such a passion and drive to protect my daughter's psychological well-being that I will not give up on her.

I, Steven Whelan, certify that the above statement is true and accurate to the best of my knowledge. As I said, I've not read the Court record by my memory is basically eidetic so, unless there was some error in transcription, I've addressed the major stated rationales for continued suspension of visitation that Judge Dawson listed. This is an unforgivable constitutional violation and the District Court needs to address it.

*[signature] 6/29/16*

**MOTION TO RECONSIDER CASE 3:16-CV-02948-PGS-LHG**

*"State Judges, as well as federal, have the responsibility to respect and protect persons from violations of federal constitutional rights." Gross v.State of Illinois, 312 F 2d 257; (1963)*

In dismissing this motion, Judge Sheridan cited Colorado River Conservation District v. Us 424 Us 800 as implying that Federal District Court abdicate from cases pending in state courts. My existing court case is pending in the Integrated Domestic Violence part of the Supreme Court of New York. I have studied the cited case now and think that, while it is tangentially relevant, the ruling in that case should not be considered grounds to dismiss. In making this decision to dismiss, Judge Sheridan said that he considers the NY Supreme Court IDV part a family court.

I have made many requests to Judge Dawson's Court to allow my daughter and I to see each other, and the requests are not even set to be heard again until September 12, 2016. My lawyer has repeatedly requested more immediate court dates and been declined. This denial of parental contact is causing immediate and irreparable injury to both myself and my daughter, and such damage has been cited by the Supreme Court as justification for adjudication in federal court in Younger v. Harris.

Re-instating routine visits would not interfere with the state court proceedings. The renewal of routine visitation would prevent myself and my daughter from sustaining more psychological damage. There is ample precedent for and normalcy surrounding state and federal cases running in tandem with each other.

Judge Dawson has not cited any state laws to justify her denial of paternal access to ▮▮▮▮▮▮▮▮▮▮▮. Supreme Court rulings in the past have shown that it is the responsible of the state court to initiate expedient hearing when stripping citizens of constitutional rights. However, Judge Sheridan has suggested that I should initiate an appeal or OSC in the NY state courts.

1

I am attaching some of the many requests I have made to Judge Dawson's court to grant paternal access. These have been ignored or openly denied by her Supreme Court, and she is not set to hear them again until our September court date mentioned above.

I am not sure how to cite the following passage properly, but it is a compendium of the ways in which my own and my daughter's constitutional rights are being violated:

*"The rights of parents to the care, custody and nurture of their children is of such character that it cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and such right is a fundamental right protected by this amendment (First) and Amendments 5, 9, and 14. Doe v. Irwin, 441 F Supp 1247; U.S. D.C. of Michigan, (1985).*
*The state has no greater power to restrain individual freedoms protected by the First Amendment than does the Congress of the United States. Wallace v. Jaffree, 105 S Ct 2479; 472 US 38, (1985).*
*Loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Though First Amendment rights are not absolute, they may be curtailed only by interests of vital importance, the burden of proving which rests on their government. Elrod v. Burns, 96 S Ct 2673; 427 US 347, (1976).*
*Law and court procedures that are "fair on their faces" but administered "with an evil eye or a heavy hand" was discriminatory and violates the equal protection clause of the Fourteenth Amendment. Yick Wo v. Hopkins, 118 US 356, (1886).*
*Even when blood relationships are strained, parents retain vital interest in preventing irretrievable destruction of their family life; if anything, persons faced with forced dissolution of their parental rights have more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982).*

2

*Parents have a fundamental constitutionally protected interest in continuity of legal bond with their children. Matter of Delaney, 617 P 2d 886, Oklahoma (1980). <Verify citation>.*

*The liberty interest of the family encompasses an interest in retaining custody of one's children and, thus, a state may not interfere with a parent's custodial rights absent due process protections. Langton v. Maloney, 527 F Supp 538, D.C. Conn. (1981).*

*Parent's right to custody of child is a right encompassed within protection of this amendment which may not be interfered with under guise of protecting public interest by legislative action which is arbitrary or without reasonable relation to some purpose within competency of state to effect. Reynold v. Baby Fold, Inc., 369 NE 2d 858; 68 Ill 2d 419, appeal dismissed 98 S Ct 1598, 435 US 963, IL, (1977).*

*Parent's interest in custody of her children is a liberty interest which has received considerable constitutional protection; a parent who is deprived of custody of his or her child, even though temporarily, suffers thereby grievous loss and such loss deserves extensive due process protection. In the Interest of Cooper, 621 P 2d 437; 5 Kansas App Div 2d 584, (1980).*

*The Due Process Clause of the Fourteenth Amendment requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for individual liberty interests at stake. Bell v. City of Milwaukee, 746 F 2d 1205; US Ct App 7th Cir WI, (1984).*

*Father enjoys the right to associate with his children which is guaranteed by this amendment (First) as incorporated in Amendment 14, or which is embodied in the concept of "liberty" as that word is used in the Due Process Clause of the 14th Amendment and Equal Protection Clause of the 14th Amendment. Mabra v. Schmidt, 356 F Supp 620; DC, WI (1973).*

*The United States Supreme Court noted that a parent's right to "the companionship, care, custody and management of his or her children" is an interest "far more precious" than any property right. May v. Anderson, 345 US 528, 533; 73 S Ct 840,843,(1952).*

*A parent's right to care and companionship of his or her children are so fundamental, as to be guaranteed protection*

3

*under the First, Ninth, and Fourteenth Amendments of the United States Constitution. In re: J.S.and C.,324 A 2d 90; supra 129 NJ Super, at 489.*

*The Court stressed, "the parent-child relationship is an important interest that undeniably*

*Warrants deference and, absent a powerful countervailing interest, protection." A parent's interest in the companionship, care, custody and management of his or her children rises to a constitutionally secured right, given the centrality of family life as the focus for personal meaning and responsibility. Stanley v. Illinois, 405 US 645, 651; 92 S Ct 1208,(1972).*

*Parent's rights have been recognized as being "essential to the orderly pursuit of happiness by free man." Meyer v. Nebraska, 262 or 426 US 390 <check cite>; 43 S Ct 625, (1923)*

*The U.S. Supreme Court implied that "a(once) married father who is separated or divorced from a mother and is no longer living with his child" could not constitutionally be treated differently from a currently married father living with his child. Quilloin v. Walcott, 98 S Ct 549; 434 US 246, 255-56, (1978).*

*The U.S. Court of Appeals for the 9th Circuit (California) held that the parent-child relationship is a constitutionally protected liberty interest. (See; Declaration of Independence --life, liberty and the pursuit of happiness and the 14th Amendment of the United States Constitution -- No state can deprive any person of life, liberty or property without due process of law nor deny any person the equal protection of the laws.) Kelson v. Springfield, 767 F 2d 651; US Ct App 9th Cir, (1985).*

*The parent-child relationship is a liberty interest protected by the Due Process Clause of the 14th Amendment. Bell v. City of Milwaukee, 746 f 2d 1205, 1242-45; US Ct App 7th Cir WI, (1985)*

*No bond is more precious and none should be more zealously protected by the law as the bond between parent and child." Carson v. Elrod, 411 F Supp 645, 649; DC E.D. VA (1976).*

*A parent's right to the preservation of his relationship with his child derives from the fact that the parent's achievement of a rich and rewarding life is likely to depend significantly on his ability to participate in the rearing of his children. A*

4

*child's corresponding right to protection from interference in the relationship derives from the psychic importance to him of being raised by a loving, responsible, reliable adult. Franz v. U.S., 707 F 2d 582, 595-599; US Ct App (1983).*

*A parent's right to the custody of his or her children is an element of "liberty" guaranteed by the 5th Amendment and the 14th Amendment of the United States Constitution. Matter of Gentry, 369 NW 2d 889, MI App Div (1983).*

*Reality of private biases and possible injury they might inflict were impermissible considerations under the Equal Protection Clause of the 14th Amendment. Palmore v.Sidoti, 104 S Ct 1879; 466 US 429.*

*Legislative classifications which distributes benefits and burdens on the basis of gender carry the inherent risk of reinforcing stereotypes about the proper place of women and their need for*

*special protection; thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination against women must be carefully tailored. the state cannot be permitted to classify on the basis of sex. Orr v. Orr, 99 S Ct 1102; 4340 US 268 <check cite>, (1979).*

*The United States Supreme Court held that the "old notion" that "generally it is the man's primary responsibility to provide a home and its essentials" can no longer justify a statute that discriminates on the basis of gender. No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas. Stanton v. Stanton, 421 US 7, 10; 95 S Ct 1373, 1376, (1975).*

*Judges must maintain a high standard of judicial performance with particular emphasis upon Conducting litigation with scrupulous fairness and impartiality. 28 USCA § 2411; Pfizer v. Lord, 456 F 2d 532; cert denied 92 S Ct 2411; US Ct App MN, (1972).*

*State Judges, as well as federal, have the responsibility to respect and protect persons from violations of federal constitutional rights. Gross v.State of Illinois, 312 F 2d 257; (1963).*

*The Constitution also protects "the individual interest in avoiding disclosure of personal matters." Federal Courts (and*

5

*State Courts), under Griswold can protect, under the "life, liberty and pursuit of happiness" phrase of the Declaration of Independence, the right of a man to enjoy the mutual care, company, love and affection of his children, and this cannot be taken away from him without due process of law. There is a family right to privacy which the state cannot invade or it becomes actionable for civil rights damages. Griswold v. Connecticut, 381 US 479, (1965).*

*The right of a parent not to be deprived of parental rights without a showing of fitness, abandonment or substantial neglect is so fundamental and basic as to rank among the rights contained in this Amendment (Ninth) and Utah's Constitution, Article 1 § 1. In re U.P., 648 P 2d 1364;Utah, (1982).*

*The rights of parents to parent-child relationships are recognized and upheld. Fantony v. Fantony, 122 A 2d 593, (1956); Brennan v.Brennan, 454 A 2d 901, (1982).*

*State's power to legislate, adjudicate and administer all aspects of family law, including determinations of custodial; and visitation rights, is subject to scrutiny by federal judiciary within reach of due process and/or equal protection clauses of 14th Amendment...Fourteenth Amendment applied to states through specific rights contained in the first eight amendments of the Constitution which declares fundamental personal rights...Fourteenth Amendment encompasses and applied to states those preexisting fundamental rights recognized by the Ninth Amendment. The Ninth Amendment acknowledged the prior existence of fundamental rights with it: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The United States Supreme Court in a long line of decisions, has recognized that matters involving marriage, procreation, and the parent-child relationship are among those fundamental "liberty" interests protected by the Constitution. Thus, the decision in Roe v. Wade, 410 US 113; 93 S Ct 705; 35 L Ed 2d 147, (1973), was recently described by the Supreme Court as founded on the "Constitutional underpinning of ... a recognition that the "liberty" protected by the Due Process Clause of the 14th Amendment includes not only the freedoms explicitly mentioned in the Bill of Rights, but also a freedom of personal choice in*

6